**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SAMUEL NEWMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DR PEPPER SNAPPLE GROUP, INC., WAYNE R. SANDERS, LARRY D. YOUNG, DAVID E. ALEXANDER, ANTONIO CARRILLO, JOSÉ GUTIÉRREZ, PAMELA H. PATSLEY, RONALD G. ROGERS, DUNIA SHIVE, and M. ANNE SZOSTAK,<br><br>Defendants. | ) | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Samuel Newman ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Dr Pepper Snapple Group, Inc. ("DPSG" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with DPSG, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between DPSG and Maple Parent Holdings Corp. ("Maple"), with its indirect subsidiary Keurig Green Mountain, Inc. ("Keurig").

2. On January 29, 2018, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive a $103.75 cash dividend per share (the "Cash Dividend"), plus stock constituting 13% of the combined company in a deal worth more than $21 billion. Despite DPSG continuing on as the surviving entity, DPSG shareholders will give up 87% ownership in the combined company to current Maple shareholders via a stock issuance (the "Merger Consideration").

3. On March 8, 2018, in order to convince DPSG shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. The Proxy solicits shareholder approval of several proposals related to the Proposed Merger necessary for its consummation and for payment of the cash dividend. These proposals include the stock issuance of DPSG common stock to Maple shareholders totaling 87% ownership in the combined company, and an amendment to the Company's certificate of incorporation to allow an increase in authorized shares to permit issuance of additional shares to Maple shareholders. The materially incomplete and misleading Proxy independently violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4. While touting the fairness of the Cash Dividend to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5. In particular, the Proxy contains materially incomplete and misleading information concerning the financial forecasts for the Company that were prepared by management and relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Merger.

6. It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming stockholder vote to allow the Company's shareholders to make an informed decision regarding the Proposed Merger.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to DPSG shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional

notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because DPSG is incorporated in this District.

**PARTIES**

11. Plaintiff is, and at all relevant times has been, a holder of DPSG common stock.

12. Defendant DPSG is incorporated in Delaware and maintains its principal executive offices at 5301 Legacy Drive, Plano, Texas 75024. The Company's common stock trades on the New York Stock Exchange under the ticker symbol "DPS".

13. Individual Defendant Wayne R. Sanders has served as Chairman of the Board since 2010 and has served as a director since 2008.

14. Individual Defendant Larry D. Young has served as a director and as Chief Executive Officer of the Company since 2007.

15. Individual Defendant David E. Alexander has served as a director of the Company since 2011.

16. Individual Defendant Antonio Carrillo has served as a director of the Company since 2015.

17. Individual Defendant José Gutiérrez has served as a director of the Company since 2016.

18. Individual Defendant Pamela H. Patsley has served as a director of the Company since 2008.

19. Individual Defendant Ronald G. Rogers has served as a director of the Company since 2008.

20. Individual Defendant Dunia Shive has served as a director of the Company since 2014.

21. Individual Defendant M. Anne Szostak has served as a director of the Company since 2008.

22. The Individual Defendants referred to in paragraphs 13-21 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

**CLASS ACTION ALLEGATIONS**

23. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of DPSG (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

24. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of February 8, 2018, there were approximately 179,744,078 shares of DPSG common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of DPSG will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i) whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly

comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

iii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I. The Proposed Merger

25. DPSG is an integrated brand owner, manufacturer and distributor of non-alcoholic beverages in the United States, Mexico and Canada. The Company offers a diverse portfolio of flavored carbonated soft drinks and non-carbonated beverages, including ready-to-drink teas, juices, juice drinks, water and mixers. The Company's brand portfolio includes brands such as Dr Pepper, Canada Dry, Penafiel, Squirt, 7UP, Crush, A&W, Sunkist soda and Schweppes, and NCB brands, such as Snapple, Hawaiian Punch, Mott's and Clamato. The Company also sells its products to distributors in Europe and Asia.

26. On January 29, 2018, DPSG and Keurig issued a press release announcing the Proposed Merger, which states in pertinent part:

> PLANO, Tex. & BURLINGTON, Mass.--(BUSINESS WIRE)--Dr Pepper Snapple Group, Inc. ("Dr Pepper Snapple") (NYSE: DPS) and Keurig Green Mountain, Inc. ("Keurig") today announced that the companies have entered into a definitive merger agreement to create Keurig Dr Pepper ("KDP"), a new beverage company of scale with a portfolio of iconic consumer brands and unrivaled distribution capability to reach virtually every point-of-sale in North America. Under the terms of the agreement, which has been unanimously approved by the Dr Pepper Snapple Board of Directors, Dr Pepper Snapple shareholders will receive $103.75 per share in a special cash dividend and retain 13% of the combined company.
>
> KDP will have pro forma combined 2017 annual revenues of approximately $11 billion. This combination of two iconic beverage companies joins together beloved brands Dr Pepper, 7UP, Snapple, A&W, Mott's and Sunkist with leading coffee brand Green Mountain Coffee Roasters and the innovative Keurig single-serve coffee system, as well as more than 75 owned, licensed and partner brands in the Keurig system.
>
> Larry Young, President and Chief Executive Officer of Dr Pepper Snapple, said, "This transaction will deliver significant and immediate value to our shareholders, along with the opportunity to participate in the long-term upside potential of our combined company and attract new brands and beverage categories to our platform in a fast-changing industry landscape. We are excited to combine with Keurig to build on the rich heritage and expertise of both companies and provide the highest-quality hot and cold beverages to satisfy every consumer throughout the day."

> Bob Gamgort, Chief Executive Officer of Keurig, said, "Our view of the industry through the lens of consumer needs, versus traditional manufacturer-defined segments, unlocks the opportunity to combine hot and cold beverages and create a platform to increase exposure to high-growth formats. The combination of Dr Pepper Snapple and Keurig will create a new scale beverage company which addresses today's consumer needs, with a powerful platform of consumer brands and an unparalleled distribution capability to reach virtually every consumer, everywhere. We are fortunate to have talented leadership teams within both companies, and I look forward to working together with the Dr Pepper Snapple team to make this combination a success for all of our stakeholders."

27. The Cash Dividend appears inadequate in light of the Company's recent financial performance and prospects for future growth. For instance, the Company has reported double-digit Gross Profit Margin growth for 2017. Moreover, the Company recently reported double-digit net income growth for the fiscal quarter for 2016 and 2017.

28. In sum, it appears that DPSG is well-positioned for financial growth, and that the Cash Dividend fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Cash Dividend for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II. The Materially Incomplete and Misleading Proxy

29. On March 8, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed

decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

***Financial Forecasts that Violate Regulation G and SEC Rule 14a-9***

30. The Proxy discloses certain financial forecasts for the Company on pages 91-94 of the Proxy. However, the Proxy fails to provide material information concerning the Company's financial forecasts, which include the DPSG Forecasts, Pro Forma Combined Company Forecasts, and Pro Forma Combined Company Illustrative Forecasts. These forecasts were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger. Proxy at 71.

31. Specifically, the Proxy provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as EBITDA and Unlevered free cash flow in the DPSG Forecasts, Pro Forma Combined Company Forecasts, and Pro Forma Combined Company Illustrative Forecasts, but fails to provide: (i) any of the line items used to calculate these non-GAAP measures, nor (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy at 93-94.

32. A company's financial projections are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transactions. The financial forecasts were relied on here to approve the merger agreement and recommend this Proposed Transaction to shareholders. The Proxy discloses that the Board (i) considered its own "knowledge of DPSG's business, operations, financial condition, earnings and *prospects*," (Proxy at 71)(emphasis added), (ii) that "…in **connection with the Board's consideration of the Transactions**, DPSG management prepared certain unaudited financial forecasts and estimates relating to DPSG's future financial performance on a stand-alone

basis without giving effect to the Transactions," (the "DPSG forecasts") (Proxy at 91), (iii) that "DPSG's management also prepared certain unaudited financial forecasts and estimates relating to the combined company's future financial performance after giving effect to the Transactions (the "pro forma combined company forecasts"), utilizing on a combined basis the DPSG forecasts and certain unaudited financial forecasts and estimates relating to Maple's future financial performance on a stand-alone basis without giving effect to the Transactions prepared and provided to DPSG by Maple (the "Maple forecasts"), as adjusted and extrapolated by DPSG's management." (Proxy at 91); (iv) "In addition, for illustrative purposes, DPSG's management also prepared, utilizing on a combined basis the DPSG forecasts and the Maple forecasts, as modified with respect to net working capital assumptions and extrapolated by DPSG's management, certain unaudited financial forecasts and estimates relating to the combined company's future financial performance after giving effect to the Transactions," (such financial forecasts and estimates, the "pro forma combined company illustrative forecasts," and, together with the DPSG forecasts and the pro forma combined company forecasts, the "Financial Forecasts") (Proxy at 92).

33. The Proxy also discloses that the Board considered future prospects of the Company on a stand-alone basis and pro forma basis in recommending the Proposed Transaction when it disclosed the following reasons to recommend shareholder vote in favor of the Proposed Transaction: (i) the expectation that combining Maple and DPSG would create a larger, more balanced company with a broader customer base across multiple beverage retail and distribution businesses, which is expected to result in improved opportunities for growth, cost savings and innovation relative to what DPSG could achieve on a stand-alone basis; (ii) the potential opportunities for greater operational efficiencies and synergies through conducting DPSG's and Maple's operations as part of a single enterprise; (iii) the Board's knowledge of DPSG's business,

operations, financial condition, earnings and prospects and its knowledge of Maple's business, operations, financial condition, earnings and prospects, based on the results of DPSG's due diligence review of Maple.

34. When a company discloses material information that includes non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose the most directly comparable GAAP financial measure **and** a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. Non-GAAP financial measures include numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure. 17 C.F.R. §244.101(a)(1). The failure to comply with Regulation G constitutes a violation of Section 14(a).

35. Moreover, the SEC has publicly stated that the use of non-GAAP financial measure can be misleading.[1] Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as DPSG included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

> Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

36. Thus, to bring the Proxy into compliance with Regulation G and cure the materially misleading nature of the non-GAAP forecasts under SEC Rule 14a-9 as a result of the omitted information on pages 93-94, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

37. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy not misleading. Indeed, the Defendants acknowledge the misleading nature of non-GAAP forecasts, as DPSG shareholders are cautioned:

> EBITDA and unlevered free cash flow are non-GAAP financial measures. A non-GAAP financial measure is a numerical measure of a company's historical or future financial performance, financial position or cash flows that excludes amounts, or is subject to adjustments that have the effect of excluding amounts, that are included in the most directly comparable measure calculated and presented in accordance with GAAP in the statements of income, balance sheets, or statements of cash flows; or includes amounts, or is subject to adjustments that have the effect of including amounts, that are excluded from the most directly comparable measure so calculated and presented. These non-GAAP financial measures are not prepared in accordance with GAAP, are not reported by all of our or Maple's competitors and may not be directly comparable to similarly titled measures of our or Maple's competitors because of potential differences in the exact method of calculation.

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html. (emphasis added).

> These non-GAAP measures should be viewed as a supplement to, and not a substitute for, GAAP measures of performance.

Proxy at 94.

38. Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor of the Proposed Merger was based, in part on the following:

- the expectation that combining Maple and DPSG would create a larger, more balanced company with a broader customer base across multiple beverage retail and distribution businesses, which is expected to result in improved opportunities for growth, cost savings and innovation relative to what DPSG could achieve on a stand-alone basis;
- the Board's knowledge of DPSG's business, operations, financial condition, earnings and prospects[. . . .]

Proxy at 70-71.

39. In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to its most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from DPSG shareholders.

40. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 781 of this title." 15 U.S.C. § 78n(a)(1).

43. As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

44. The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9.

47. Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading." 17 C.F.R. § 244.100(b).

48. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial forecasts for the Company and the combined company.

49. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

50. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.

The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

51. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

52. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

53. DPSG is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

54. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

55. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

56. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57. The Individual Defendants acted as controlling persons of DPSG within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of DPSG, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing the Proxy.

60. In addition, as the Proxy sets forth at length, and as described herein, the Individual

Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

63. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C. Directing the Defendants to account to Plaintiff and the Class for all damages

sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 22, 2018

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Michael Van Gorder*
Michael Van Gorder (#6214)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*